IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 5:19-CR-22 MOC |
| | ) | |
| vs. | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| 4) ROBERT CANNON HAYES | ) | |
| | ) | |
| | ) | |

## INTRODUCTION

Defendant Robert Cannon Hayes—a former North Carolina State Representative, former U.S. Congressman, and former Chairman of the North Carolina Republican Party—lied to the FBI, even after being reminded that it was a crime to do so, and even after being confronted with recorded evidence clearly demonstrating that his statements were lies. And he did so to protect himself and his political associates from an ongoing federal investigation. Nevertheless, Hayes has since admitted that his statements were untrue, pleaded guilty, accepted responsibility, and agreed to cooperate with the government. As a result—and in line of the plea agreement and the applicable Sentencing Guidelines range—the government recommends a sentence of probation.

## FACTUAL BACKGROUND

Having presided over a multi-week jury trial, the Court does not need a lengthy recitation of the facts. The government, therefore, summarizes only the key facts relevant to Hayes's criminal conduct. On May 21, 2018—days after Lindberg contributed $500,000 to the North Carolina Republican Party ("NCGOP") earmarked for contribution to North Carolina Insurance Commissioner Mike Causey—Hayes spoke with Commissioner Causey. During that recorded telephone call, Commissioner Causey asked Hayes if Gray had told him, "what they were

1

doing." Hayes confirmed that he did and added, "Yeah . . . we are more than happy to help, so when all that comes through we'll be glad to figure out the best way to, do it." Commissioner Causey and Hayes went on to discuss Lindberg's contribution to be routed through the NCGOP, as well as the promised independent expenditure committee. Before the call ended, Hayes interjected the personnel action requested by Lindberg and Gray, stating:

> "Well, the thing that I heard I think is important is, and I don't know enough about it to really [speak] intelligently, but there is some personnel issues that they were hoping that you would . . . I don't even know the lady that was apparently really, really good in financial analysis that they would like to see put back into that department to make sure things got done that needed to get done."

The following month, Commissioner Causey began receiving $10,000 monthly contributions from the NCGOP.

On July 25, 2018—after Lindberg and Gray had grown frustrated with Commissioner's Causey's inaction—Lindberg and Gray called Hayes to direct the contribution of $250,000 from the NCGOP to Commissioner Causey's campaign account by the end of the week. Hayes advised that previously they had discussed breaking the payments into monthly installments "so it didn't jump out," and this large contribution—particularly two years before the election—was "gonna draw attention" and "somebody 'll start asking questions." Nevertheless, he agreed to do it, confirming, "when you say do it, that, that's easy, that's easy. . . . Alright, I'll get 'er done." Indeed, the very next day, the NCGOP transferred $230,000 to Commissioner Causey's campaign account, bringing the total transferred in June and July to $250,000.

In the days that followed, the NCGOP confirmed to Lindberg and Gray that the transfer had occurred, and Hayes called Commissioner Causey to confirm that he received it. Finally, on August 19, 2018, Hayes and another individual exchanged emails in preparation for a call between Hayes and Commissioner Causey. The email included the following talking points,

2

among others: "As [Commissioner Causey] knows there are 'people' who greatly want to help him through us, but they need some progress on certain matters. We are not asking for anything untold, but If he believes these are the correct moves then please make these moves as soon as possible."

Less than 10 days later, Hayes was interviewed by the FBI. Minutes prior to the interview, Gray called Hayes and warned him that the FBI was asking questions about the transfers from the NCGOP to Commissioner Causey. Nevertheless, Hayes lied to the FBI throughout the 30-minute interview. Hayes was asked if he had had discussions with Lindberg or anyone representing Lindberg regarding a contribution and Lindberg's expectations regarding that contribution. Hayes responded, "Absolutely not." Hayes further denied that Lindberg had directed where the contribution would go. And, Hayes denied speaking with Commissioner Causey about Lindberg, Gray, or personnel at the Department of Insurance. During the interview, the FBI agents reminded Hayes that it was a crime to lie to the FBI, and Hayes confirmed that he had told the truth. The agents also played for Hayes the recording of the July 25th call in which he, Lindberg, Gray, and Commissioner Causey agreed the NCGOP would contribute $250,000 to Commissioner Causey's campaign by the end of the week.

As stated in the defendant's sentencing memorandum, Hayes has since admitted his statements were lies, pleaded guilty, accepted responsibility, and agreed to cooperate with the government. He was prepared to testify at the trial of his co-defendants if asked to do so.

**THE APPLICABLE SENTENCING GUIDELINES AND RECOMMENDED SENTENCE**

The parties agree with the Guidelines calculations set forth in the Presentence Investigation Report ("PSR"), resulting in a total offense level of 4. PSR at ¶ 24. The parties further agree with the United States Probation Office's determination that Hayes's criminal

history—which reflects no prior convictions—qualifies for Criminal History Category I, resulting in a Guidelines range of zero to six months' imprisonment. *Id.* at ¶¶ 29, 49. While Hayes's criminal conduct was both serious and willful, he admitted his wrongdoing before trial, accepted responsibility, and agreed to cooperate with the government. For the reasons detailed herein, as well as in the PSR, a sentence at the low end of the applicable Guidelines range is sufficient but not greater that necessary in this instance. The parties jointly recommend a sentence of probation.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court determine that the defendant's Guidelines offense level is 4 and his Criminal History Category is I. The government further respectfully requests that, taking into consideration the sentencing factors set forth in section 3553(a), the Court sentence the defendant to probation.

Dated: August 10, 2020
R. ANDREW MURRAY
UNITED STATES ATTORNEY

*s/ Dana O. Washington*
William T. Stetzer
Dana O. Washington
Assistant United States Attorneys

COREY R. AMUNDSON
CHIEF, PUBLIC INTEGRITY SECTION

*s/ James C. Mann*
James C. Mann
Trial Attorney

## CERTIFICATE OF SERVICE

       I hereby certify that this 10th day of August 2020, the foregoing document was served electronically through ECF filing upon counsel of record for the defendant.

                R. ANDREW MURRAY
                UNITED STATES ATTORNEY

                *s/ Dana O. Washington*
                DANA O. WASHINGTON
                ASSISTANT UNITED STATES ATTORNEY