# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## Statesville Division

UNITED STATES OF AMERICA,

v.

GREG E. LINDBERG, *et al.*,

    *Defendants.*

No. 5:19-cr-22-MOC-DSC

**DEFENDANT GREG E. LINDBERG'S MOTION FOR RELEASE PENDING APPEAL**

This Court is scheduled to sentence defendant Greg Lindberg on August 19, 2020, and will, shortly thereafter, enter a final judgment, which Mr. Lindberg intends to appeal. The Court should grant Mr. Lindberg release under 18 U.S.C. § 3143 while that appeal is pending.

Mr. Lindberg's release pending appeal is more than justified by the unsettled state of federal bribery law. As the Court has repeatedly acknowledged, the Fourth Circuit will ultimately bring clarity to several issues raised in this case, including questions about the scope and application of the Supreme Court's decision in *McDonnell v. United States*, 136 S. Ct. 2355 (2016). Importantly, to find that these issues justify release pending appeal, the Court simply must determine that they "could be decided the other way." *United States v. Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991) (per curiam). The Court does not need to conclude that Mr. Lindberg is likely to succeed on appeal. In fact, courts have granted release pending appeal to past bribery defendants who were ultimately unsuccessful in the Fourth Circuit. *See, e.g.*, Order, *McDonnell v. United States*, No. 15-4019 (4th Cir. Jan. 26, 2015), Dkt. No. 39 (granting release pending appeal that was unsuccessful in Fourth Circuit but successful in Supreme Court); Order, *United States v. Jefferson*, No. 1:07-cr-209 (E.D. Va. Nov. 18, 2009), Dkt. No. 619 (granting release pending appeal in a case that was unsuccessful at the Fourth Circuit). This Court should follow suit, particularly when doing so could avoid the unnecessary incarceration of a 50-year-old defendant during a pandemic that prisons have struggled to combat.

**LEGAL STANDARD**

18 U.S.C. § 3143 governs a defendant's release pending appeal. *See also* Fed. R. Crim. P. 46(c). This statute states, in relevant part, that a defendant should not be detained if the Court finds: (1) "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released" on personal recognizance, an unsecured appearance bond, or other conditions, and (2) "the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in" either "reversal" or "an order for a new trial." 18 U.S.C. § 3143(b)(1).

A substantial question is simply "a 'close' question or one that very well could be decided the other way." *Steinhorn*, 927 F.2d at 196 (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)). In other words, it "is one of more substance than would be necessary to a finding that it was not frivolous." *Giancola*, 754 F.2d at 901. Substantial questions can include ones that are "novel" or have "not been decided by controlling precedent." *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985). A question is likely to result in reversal or an order for a new trial if, assuming the defendant wins on appeal, the question is integral enough to the merits of the case to warrant that relief. *Id.*; *see Steinhorn*, 927 F.2d at 196 (granting release pending appeal because "if [the Fourth Circuit] reverse[d] the district court's ruling on the entrapment issue, [it] would likely order a new trial").

Notably, to find a "substantial question" likely to result in reversal or a new trial, the Court does not need to find "a likelihood of success on appeal." *United States v. Garcia*, 340 F.3d 1013, 1020 n.5 (9th Cir. 2003); *Giancola*, 754 F.2d at 900 (holding that statute does not "mean that a court may grant bail only if it finds that its own rulings are likely to be reversed on appeal"). This Court must decide only whether other judges could disagree with its holding, and if they do, whether the relief that they granted would be a new trial or reversal.

2

**ARGUMENT**

Much of the § 3143 standard should not be in dispute as to Mr. Lindberg: He is not a flight risk, and he is not bringing an appeal solely for purposes of delay. In addition, as explained below, his appeal will raise at least three substantial questions that the Fourth Circuit will need to resolve. Finally, the global pandemic raises complications that will render it difficult for Mr. Lindberg to meaningfully contribute to his appeal while incarcerated.

For these reasons, Mr. Lindberg should be granted release pending appeal. But if this Court disagrees, then it should set a report date for Mr. Lindberg that will allow the Fourth Circuit sufficient time to conduct an unhurried review of whether release is appropriate pending appeal. *See* 18 U.S.C. § 3145(c); Fed. R. App. P. 9(b).

**I.  Mr. Lindberg Is Not a Flight Risk.**

This Court has already concluded that Mr. Lindberg is not a flight risk. After the jury verdict, the Court observed that Mr. Lindberg has been "on bond for this long period of time where there appear to be no violations," that he has spent significant resources to "try to get acquitted," and that this effort would continue with an "attempt to appeal this." Trial Tr. 1836:12-15, 22-23.

The Court's observation remains true today: Mr. Lindberg has complied with his release conditions and is committed to seeing the judicial process through all the appellate stages. In addition, Mr. Lindberg has been well aware, throughout these proceedings, of both the statutory maximum penalty and the guidelines' range for the conduct of which he now stands convicted. In the time since this Court concluded that Mr. Lindberg is not a flight risk, nothing has changed about his commitment to vindicating his rights within the judicial process.

**II.  Mr. Lindberg's Appeal Will Not Be Brought for Delay, and It Will Raise At Least Three Substantial Questions of Law.**

It is also beyond question that Mr. Lindberg's appeal will be brought for purposes other than delay. On appeal, Mr. Lindberg will raise several meritorious arguments, some of which this Court

3

acknowledged will need to be resolved by the Fourth Circuit, e.g., Trial Tr. 1359:5-7 ("And there's nothing in the Fourth Circuit that directly answers that question [of whether this case involves an official act] yet, but we'll get the answer in this case if we send her up."), and another of which had the support of the government during trial, *e.g.*, Trial Tr. 1346:7-11, 1453:13-24 (discussing the appropriate jury instruction on official act); Gov't's Mem. in Supp. of Proposed Jury Instructions, Dkt. No. 186 (raising concerns about the Court's proposed instruction on official act). Mr. Lindberg has also shown that he is seriously pursuing his appeal for reasons other than delay by diligently preserving his appellate rights through objections and filings and by ordering trial transcripts. *See United States v. Lanning*, No. 10-cr-47, 2010 WL 3076447, at *1 (W.D.N.C. Aug. 4, 2010) (finding appeal was not for purpose of delay because "[t]he Appellant ha[d] ordered transcripts from his trial before the Magistrate Judge, indicating the seriousness of the pursuit of his appeal").

Thus, the only question is whether the appeal will raise "a substantial question of law or fact likely to result in" either "reversal . . . [or] an order for a new trial." 18 U.S.C. § 3143(b)(1)(B). As explained below, at least three substantial questions justify Mr. Lindberg's release pending appeal: whether the Court impermissibly directed a verdict on the "official act" element, whether substantial evidence supports a finding of an "official act," and whether § 666(a)(2) must be limited to "official acts" to preserve its constitutionality.

### A. A Substantial Question Exists as to Whether the Court Impermissibly Directed a Verdict in its Instruction on the "Official Act" Element, and This Question Would Require a New Trial if the Appeal Succeeds.

As Mr. Lindberg explained in his motion for a judgment of acquittal or a new trial, the Fifth and Sixth Amendments guarantee criminal defendants "the right to have a jury determine, beyond a reasonable doubt, [the defendant's] guilt of every element of the crime with which he is charged." Mem. in Supp. of Mot. for Judgment of Acquittal or New Trial at 2-15, Dkt. No. 213-1 ("Lindberg Mem.") (citing *United States v. Gaudin*, 515 U.S. 506, 522-23 (1995)). Specifically, two steps are the sole

province of the jury: "(1) determining the facts as to each element of the crime, and (2) applying the law as instructed by the judge to those facts." *United States v. Johnson*, 71 F.3d 139, 142 (4th Cir. 1995).

Mr. Lindberg has raised a substantial question about whether the Court infringed on this principle by determining facts for the jury and instructing the jury on how to apply the law to the facts:

> *In this case* the charge is that the question or matter is the removal and replacement of the senior deputy commissioner in charge of overseeing the regulatory review of Defendant Lindberg's insurance companies. *You're hereby instructed that the removal or replacement of a senior deputy commissioner by the commissioner would constitute an official act.*

Tr. 1781:2-7 (emphasis added). Reasonable minds could disagree on whether this instruction deprived the jury of both the ability to decide whether the facts adduced at trial showed the existence of an "official act," and the ability to apply the legal standard for an "official act," as defined in *McDonnell*, to the facts of this case. Thus, the instruction raises a substantial question of law.

Although the Court has rejected this argument and concluded that the instruction was not erroneous, this issue is nonetheless "substantial" under § 3143. Again, § 3143 does not require a court to conclude that it incorrectly decided an issue or that it is likely to be reversed. Such a requirement would be paradoxical: if a court believed its ruling was likely wrong, it would not have ruled that way in the first place. Rather, § 3143 requires a court to decide only whether an issue "very well could be decided the other way." *Steinhorn*, 927 F.2d at 196. This issue meets that standard for four reasons.

First, at trial, the government agreed with Mr. Lindberg and his codefendants that the jury should get to decide whether the evidence in the case showed the existence of an "official act." Trial Tr. 1453:13-23; *id.* at 1456:15-19; Gov't Mem. in Supp. of Proposed Jury Instructions 2, Dkt. No. 186 ("Whether something qualifies as an 'official act' is an issue for a properly instructed jury, so long as it is not something the Supreme Court held categorically insufficient to constitute official action . . . ."). Indeed, in district courts across the country, the government has proposed instructions that give the

jury the right to decide the "official act" question.[1] The government's consistent position on this issue and other courts' acceptance of that position shows that reasonable judges could disagree with this Court's ruling.[2]

Second, neither this Court nor the government has identified controlling precedent—or, indeed, any other district court or circuit court decision—that has approved a similar instruction on the "official act" element. And defense counsel has been unable to locate another court that has given a similar instruction. This lack of any precedent, let alone "controlling precedent," helps demonstrate that the issue is a "substantial question" under § 3143. *Miller*, 753 F.2d at 23.

Third, the uncertainty over the Court's "official act" instruction is heightened by *McDonnell* and a long line of other precedent on the right to a jury trial. *See* Lindberg Mem. 2-15. In *McDonnell*, the Supreme Court repeatedly clarified that the "official act" element must be decided by the jury. As one example, the Supreme Court noted that "[s]etting up a meeting, hosting an event, or calling an official" may count as a decision or action under the second prong of the *McDonnell* test since a "*jury could conclude* . . . that the official was attempting to pressure or advise another official on a pending matter.*" 136 S. Ct. at 2371 (emphasis added). As another example, after finding that "the jury was improperly instructed on the meaning of 'official act,'" *id.* at 2373, the Supreme Court remanded the case to the Fourth Circuit to "resolve in the first instance" whether "there [was] sufficient evidence for *a jury* to convict Governor McDonnell of *committing* or *agreeing to commit* an 'official act.'" *Id.* at 2375

---

[1] *E.g.*, United States' Proposed Jury Instructions at 34-37, *United States v. Gilbert*, No. 2:17-cr-419 (N.D. Ala. July 6, 2018); Government's Supplemental Request to Charge at 2-4, *United States v. Van Buren*, No. 1:16-cr-00243 (N.D. Ga. Oct. 25, 2017), Dkt. No. 77; United States' Proposed Jury Instructions at 22, *United States v. Suhl*, No. 4:15-cr-300 (E.D. Ark. July 6, 2016), Dkt. No. 91.

[2] *See* Jury Instructions at 23-24, *United States v. Gilbert*, No. 2:17-cr-419 (N.D. Ala. July 18, 2018) (final jury instructions assigning official-act element to jury); *United States v. Van Buren*, 940 F.3d 1192, 1200 (11th Cir. 2019) (summarizing jury instructions assigning official-act element to jury), *cert. granted on other grounds*, 206 L. Ed. 2d 822 (Apr. 20, 2020); Closing Instructions at 20, *United States v. Suhl*, No. 4:15-cr-300 (E.D. Ark. July 20, 2016), Dkt. No. 123 (assigning "official act" element to jury).

(emphasis added). It instructed the Fourth Circuit to set the case for a new trial if it found sufficient evidence. It is possible that other judges could read these statements and conclude that *McDonnell* left the "official act" element to the jury. And these judges would have good reason to adopt this reading in light of Supreme Court and circuit precedent requiring juries to find every element of an offense beyond a reasonable doubt. *E.g.*, *Gaudin*, 515 U.S. at 514; *United States v. Ramirez-Castillo*, 748 F.3d 205, 214 (4th Cir. 2014); *Johnson*, 71 F.3d at 142.

Finally, another circuit has found a "substantial question" under § 3143 in a case where the district court failed to submit a full and correct "official act" instruction to a jury for its consideration. In *United States v. Van Buren*, the district court neglected to instruct the jury that only matters "similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee" fall under the definition of an "official act." 940 F.3d 1192, 1203 (11th Cir. 2019) (internal quotation mark omitted), *cert. granted on other grounds*, 206 L. Ed. 2d 822 (U.S. Apr. 20, 2020). Though the district court initially denied an appeal bond to the defendant, the Eleventh Circuit granted one without opposition from the United States. See Order, *United States v. Van Buren*, No. 18-12024 (11th Cir. Aug. 6, 2018) (granting appeal bond); Minute Sheet, *United States v. Van Buren*, No. 16-cr-243, Dkt. No. 108 (N.D. Ga. May 2, 2018) (district court's order denying appeal bond). Ultimately, the Eleventh Circuit sided with the defendant and held that the district court's erroneous instruction deprived the jury of the ability to properly identify a "question" or "matter" that met *McDonnell*'s standards. *Van Buren,* 940 F.3d at 1197. Here too, this Court should grant release pending appeal and allow the Fourth Circuit to decide for itself whether the Court's instruction deprived the jury of a similar opportunity to identify the components of an "official act."

For these reasons, the propriety of the Court's "official act" instruction is a "substantial question" under § 3143. This issue is also "likely to result in [ ] reversal . . . [or] an order for a new trial." 18 U.S.C. § 3143(b). To decide this inquiry, the Court must assume that the Fourth Circuit will

7

agree with Mr. Lindberg's arguments on appeal. *Steinhorn*, 927 F.2d at 196. Once that assumption is made, it is clear that the Fourth Circuit's remedy would be a new trial. A new trial is the standard remedy for erroneous jury instructions. *E.g.*, *McDonnell*, 136 S. Ct. at 2375.[3]

## B. A Substantial Question Exists as to Whether a Reasonable Jury Could Have Found an "Official Act," and Reversal Would Result if the Appeal Succeeds.

A second substantial question is whether there is sufficient evidence of an "official act." *McDonnell* raised the bar for an "official act": the term is now limited to a "decision" or "action" on "a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee." *McDonnell*, 136 S. Ct. at 2372. Since *McDonnell*, only a few courts have addressed this definition, but these decisions have not gone far beyond *McDonnell*'s plain language in defining what counts as an "official act." Many decisions, often unpublished, merely confirm that activities that are nearly identical to lawsuits or administrative determinations are "official acts." *Cf. United States v. Lee*, 919 F.3d 340, 354 (6th Cir. 2019) (charging decisions in a criminal case); *United States v. Malkus*, 696 F. App'x 251, 252 (9th Cir. 2017) (non-precedential) (judicial monetary awards); *United States v. Skelos*, 707 F. App'x 733, 739 (2d Cir. 2017) (non-precedential) (legislation); *United States v. Conrad*, 760 F. App'x 199, 208 (4th Cir. 2019) (per curiam) (non-precedential) (awarding of government contracts); *United States v. Suhl*, 885 F.3d 1106, 1113 (8th Cir. 2018) (increase in Medicaid reimbursements to company); *United States v. Halloran*, 664 F. App'x 23, 28-29 (2d Cir. 2016) (non-precedential) (allocation of state funds). This Court's

---

[3] Because the instruction in this case directed the jury to find an element of a crime, it is a structural error that requires the Fourth Circuit to order a new trial; the court cannot engage in a harmless-error analysis as an alternative basis to affirm. Lindberg Mem. 12-13. Even if the Fourth Circuit could engage in this analysis, the error was not harmless: A reasonable jury could have concluded that the reassignment of tasks from one employee to another was not similar to a lawsuit, hearing, or administrative determination—especially since the trial evidence showed that such reassignments were routine and could be accomplished through casual, informal conversations. Lindberg Mem. 13-15. Like *McDonnell*, this case does not present an instance where a court can deem a constitutional error harmless beyond a reasonable doubt. 136 S. Ct. at 2375.

conclusion that the "removal or replacement" of an employee is an "official act" was the first of its kind. No other district court or circuit court decision, let alone one in the Fourth Circuit, has found that the "removal or replacement" of a government employee is similar to a decision on a lawsuit, hearing, or administrative determination. This lack of "controlling precedent" and the "novel[ty]" of this issue reinforce that it is a "substantial question" under § 3143. *Miller*, 753 F.2d at 23.

This Court's statements during trial underscore the uncertainty and lack of existing precedent on whether the removal or replacement of an employee is an "official act." The Court repeatedly acknowledged that this issue was one that the Fourth Circuit, and perhaps the Supreme Court, would ultimately need to decide, and it conceded that appellate courts could send the case back. *See* Trial Tr. 1359:5-7 ("And there's nothing in the Fourth Circuit that directly answers that question yet, but we'll get the answer in this case if we send her up."); *id.* at 1451:2-7 ("So what it is down to is the Court making a determination, the Court believes, legally as to whether something is an official act under the statute. And the -- because that's the only way we can have absolute consistency. And then the Court of Appeals, and maybe the Supreme Court, will determine whether or not such thing is an official act."); *id.* at 1452:5-11 ("I cannot imagine that this is not something that judges are going to have to make the call on and then the Court of Appeals is going to have to decide if we are right or wrong about that. The courts have given us guidance. The Supreme Court has given us guidance about what is and what isn't, and they've given us some examples of that."); *id.* at 1453:1-4 ("So I think it's got to be clear and I think it's going to be clear after this case. And if not, if the Court of Appeals sends it back, then I think it will be very, very unclear."); *id.* at 1455:25-1456:6 ("And I'm either right or wrong on it. If it is that two juries can find the same act, I think that's -- I think that would be silly. I think the Court of Appeals needs to look at what the evidence of the act was. And if they think it's not an official act, then they can send it back. And if they think it is an official act, then they should affirm if it goes there.")

9
Case 5:19-cr-00022-MOC-DSC   Document 254   Filed 08/17/20   Page 9 of 17

During the hearing on Mr. Lindberg's motion to dismiss, the Government agreed that this case did not present a clear example of an "official act," noting that "[t]here are very few cases that fall into the middle of the spectrum like this case does." Mot. to Dismiss Tr. 15:22-23, Dkt. No. 84.

These frank acknowledgements were appropriate, since this case will present a matter of first impression for not only the Fourth Circuit but all circuit courts.

*United States v. Fattah* does not remove the uncertainty around this question. 914 F.3d 112 (3d Cir. 2019). Although this Court relied on *Fattah* in finding an "official act," *Fattah* does not address the precise issue in this case. *Fattah* holds only that when a "public official hires an employee to work in his government office, he has engaged in an official act." *Id.* at 157. It does not answer whether an action affecting an existing employee—here, the removal or replacement of an employee on certain tasks—constitutes an "official act." And regardless, *Fattah* neither binds this Court nor the Fourth Circuit, which is free to disagree with *Fattah*'s holding when analyzing the issue in this case.

This Court should follow the lead of other courts that have granted release pending appeal because of similar uncertainty over the meaning of "official act"—even when those defendants ultimately lost on appeal. For example, in *McDonnell*, the Fourth Circuit granted release pending appeal to Governor McDonnell, No. 15-4019 (4th Cir. Jan. 26, 2015), but it ultimately rejected his argument, *United States v. McDonnell*, 792 F.3d 478, 486 (4th Cir. 2015), *vacated and remanded*, 136 S. Ct. 2355 (2016). Similarly, in *United States v. Jefferson*, the district court granted release pending appeal to an honest-services fraud defendant who challenged a jury instruction defining an "official act." No. 1:07-cr-209 (E.D. Va. Nov. 18, 2009), Dkt. No. 619. That defendant also lost his appeal. *United States v. Jefferson*, 674 F.3d 332, 335, 354-55 (4th Cir. 2012), *as amended* (Mar. 29, 2012). Like these courts, this Court should grant release, even if it believes Mr. Lindberg will lose on appeal, if it finds that this case presents a substantial issue that the Fourth Circuit has not offered guidance on before.

Finally, this issue meets § 3143's requirement that a favorable decision from the Fourth Circuit would likely result in reversal. If the Fourth Circuit finds that Mr. Lindberg was convicted on insufficient evidence of an "official act," the necessary remedy would be reversal and an order to enter a judgment of acquittal on at least honest-services fraud. No other remedy exists for challenges to the sufficiency of the evidence, since the Double Jeopardy Clause bars retrial. *See United States v. Akpi*, 26 F.3d 24, 26 (4th Cir. 1994) ("The Double Jeopardy Clause affords protection against a retrial following reversal based solely on evidentiary insufficiency."). Thus, the insufficiency of evidence of an "official act" provides a second substantial question that warrants Mr. Lindberg's release.

> **C. A Substantial Question Exists as to Whether 18 U.S.C. § 666(a)(2) Must Be Limited to "Official Acts" to Preserve Its Constitutionality, and This Question Would Result in Either a New Trial or Reversal if the Appeal Succeeds.**

The appeal will present a third substantial question for the Fourth Circuit—specifically, whether 18 U.S.C. § 666(a)(2) is limited to bribes and kickbacks involving "official acts" in cases related to public officials. Although this Court found no such limitation, this question is novel for the Fourth Circuit, and no controlling precedent exists on it. *Miller*, 753 F.2d at 23. Indeed, under *McDonnell* and *United States v. Jennings*, 160 F.3d 1006 (4th Cir. 1998), there are substantial questions about whether an "official act" is a component of § 666. *Steinhorn*, 927 F.2d at 196.

The constitutional concerns raised in *McDonnell* demonstrate that, in cases involving public officials, § 666 cannot punish conduct that does not involve an "official act." In *McDonnell*, the government agreed to give meaning to the vague phrase "the intangible right of honest services" in 18 U.S.C. § 1346 by limiting it to the conduct prohibited by 18 U.S.C. § 201: bribes or kickbacks given in exchange for "official acts," which the government defined to encompass "any decision or action, on any question or matter, that may at any time be pending, or which may by law be brought before any public official, in such official's official capacity." *McDonnell*, 136 S. Ct. at 2365, 2367 (emphases and internal quotations marks omitted). But the Supreme Court rejected the government's

interpretation of an "official act" because it raised three "significant constitutional concerns." *Id.* at 2372. First, the Supreme Court held that the government's proposed definition would cast a "pall" over constituents' efforts to lobby their elected officials; the proposed definition was so broad that "[o]fficials might wonder whether they could respond to even the most commonplace requests for assistance, and citizens with legitimate concerns might shrink from participating in democratic discourse." *Id.* Second, despite the government's effort to replace a vague phrase—"the intangible right of honest services"—with one that was more concrete, the Supreme Court remained concerned that, under the government's proposed definition, "public officials could be subject to prosecution, without fair notice, for the most prosaic interactions." *Id.* at 2373. Finally, the Supreme Court noted the "significant federalism concerns" raised by the government's broad definition, which intruded on a state's "prerogative to regulate the permissible scope of interactions between state officials and their constituents." *Id.*

In light of these three concerns, the Supreme Court adopted the definition of "official act" that persists today: a decision or action on a formal exercise of governmental power similar to a lawsuit, hearing, or administrative determination. *Id.* at 2374. Since *McDonnell*, the government has continued to use the Supreme Court's definition in honest-services fraud prosecutions, likely recognizing that a failure to narrow the phrase "the intangible right of honest services" in this manner would render its prosecutions unconstitutional.

The same concerns that animated *McDonnell* exist with § 666(a)(2). The statute punishes anyone who gives a thing of value to a government agent "in connection with any business, transaction, or series of transactions of such organization, government, or agency." In its broadest sense, "any business, transaction, or series of transactions" would capture the unconstitutional definition proposed by the government in *McDonnell*: "any decision or action, on any question or matter, that may at any time be pending, or which may by law be brought before any public official,

12
Case 5:19-cr-00022-MOC-DSC   Document 254   Filed 08/17/20   Page 12 of 17

in such official's official capacity." *McDonnell*, 136 S. Ct. at 2367 (emphases removed). Yet despite these concerns, the government refused to limit § 666 to "official acts" in this case. It conceded only that "[t]he following actions performed or agreed to be performed by the government agent, without more, are not sufficient to establish a violation of Title 18, United States Code, Section 666: setting up a meeting, hosting an event, talking to another official, sending a subordinate to a meeting, or simply expressing support for a constituent." Trial Tr. 1784:13-18. But this instruction allows any other "commonplace request[ ] for assistance" to fall within § 666, *McDonnell*, 136 S. Ct. at 2372, and the Court offered no other guidance to the jury on the law it was required to apply. Although this Court agreed with the government at trial, the Fourth Circuit could disagree based on the concerns identified in *McDonnell*.

*Jennings* further shows that the Court's decision could be decided another way by the Fourth Circuit. In *Jennings*, the Fourth Circuit affirmed a conviction under § 666 because "a reasonable juror could have concluded that there was a course of conduct involving" payments of bribes "in exchange for a pattern of *official actions* favorable to [the defendant's] companies." 160 F.3d at 1018 (emphasis added). The parties in that case appeared not to dispute that § 666 would be limited to "official acts," and the Fourth Circuit repeatedly endorsed that reading in its opinion, using the terms "official act" or "official action" 35 times when describing the conduct punished by § 666. *See generally* 160 F.3d 1006. The repeated use of these terms makes sense since, as *Jennings* observes, § 666 grew out of § 201 and was enacted to resolve a circuit split over whether § 201 applied to state officials. *Id.* at 1012-13. Thus, *Jennings* further supports *McDonnell*'s extension to § 666.

No controlling precedent has held otherwise. Although other circuit courts have commented on this issue, none of them bind the Fourth Circuit, and none of them squarely decided whether § 666, as applied to a state official, has an "official act" requirement. In *United States v. Suhl*, the Eighth Circuit noted in dicta that § 666 lacks an "official act" requirement before finding, in any event, that the

government had proven one. 885 F.3d 1106, 1112-13 (8th Cir. 2018). In *United States v. Ng Lap Seng*, the Second Circuit assessed the constitutional concerns only "as applied" to a non-governmental UN official in concluding that no "official act" element was required. 934 F.3d 110, 130-37 (2d Cir. 2019). And in any event, *Ng Lap Seng*'s discussion of this element was not necessary to the decision, since the district court had given an "official act" instruction for § 666, *id.* at 138-39, and the Second Circuit found the trial evidence sufficient to support the conviction, *see id.* at 140.

Even if these decisions had answered the question at issue, they do not bind the Fourth Circuit, and there is "real reason to believe that this circuit would depart from" the reasoning of those decisions. *Giancola*, 754 F.2d at 901. The decisions offer little persuasive value, since their rationales overlook a puzzling result: If § 666 has no "official act" requirement, then Governor McDonnell could have been successfully prosecuted under that statute. This result would leave *McDonnell* as dead-letter law. Lindberg Mem. at 24. And in the end, this Court's inquiry is limited to whether there is a substantial question here—not which way the Fourth Circuit will ultimately rule.

If the Fourth Circuit agrees with Mr. Lindberg on this substantial question, the remedy will be a new trial or reversal. A new trial is the typical remedy for jury instruction errors.[4] In addition, if the Fourth Circuit also agrees that the government failed to introduce sufficient evidence on an "official act," reversal will be required instead.

## III. The Global Pandemic Makes a Decision on Release Pending Appeal Particularly Critical.

The COVID-19 pandemic places additional importance on the decision to grant Mr. Lindberg release pending appeal. Mr. Lindberg is 50-years-old, making him more susceptible to the disease than

---

[4] No harmless error exists here because, for the reasons explained in Mr. Lindberg's motion for a judgment of acquittal or a new trial, a reasonable jury could have found a lack of an "official act" in this case. Lindberg Mem. 14-15, 27-28. A properly instructed jury could have found that task reassignment is not an "official act" in light of evidence that such reassignments occurred informally and regularly and did not guarantee any outcomes on regulatory matters. *Id.*

14
Case 5:19-cr-00022-MOC-DSC   Document 254   Filed 08/17/20   Page 14 of 17

others. A recent study showed that the "risk of death from the disease rose with each decade of age." Erin Schumaker, *Risk for severe COVID-19 increases with each decade of age*, ABC News (Apr. 1, 2020), https://abcnews.go.com/Health/risk-severe-covid-19-increases-decade-age/story?id=69914642. The facts support that conclusion. Data from the Centers for Disease Control and Prevention shows that people between the ages of 50 and 64 are 4 times more likely to be hospitalized for COVID-19 complications and 30 times more likely to die from the disease than people between ages 18 and 29. *Coronavirus Disease 2019 (COVID-19)*, Centers for Disease Control and Prevention (Aug. 10, 2020), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html. The risks may be particularly acute for prisoners of advancing age. One study found that "[t]he COVID-19 case rate for prisoners was 5.5 times higher than the US population case rate of 587 per 100,000." Brendan Saloner, *COVID-19 Cases and Deaths in Federal and State Prisons*, JAMA Network (July 8, 2020), https://jamanetwork.com/journals/jama/fullarticle/2768249.

In addition to these issues, the pandemic will make it more difficult for counsel to communicate with Mr. Lindberg during the pendency of his appeal. As discussed in Mr. Lindberg's sentencing memorandum, the Bureau of Prisons has put in place extensive protocols to stem the spread of the virus, including mandatory lockdowns and limited access to telephone or e-mail. Lindberg Sentencing Mem. 31-34, Dkt. No. 246. Although these protocols may be necessary to ensure the safety of those committed to the Bureau's custody during the pandemic, they will undoubtedly stymie essential communications between Mr. Lindberg and his counsel.

Mr. Lindberg's appeal will undoubtedly present novel and difficult questions. The Fourth Circuit could agree with Mr. Lindberg's arguments and reverse or remand for a new trial. In light of this possibility and the unique risks presented by the pandemic, it makes little sense to subject Mr. Lindberg to prison while the Fourth Circuit resolves his appeal.

**IV. If the Court Denies Release, It Should Set a Report Date that Allows the Fourth Circuit Reasonable Time to Adjudicate an Appeal of the Denial.**

If the Court denies Mr. Lindberg release under § 3143, then it should set Mr. Lindberg's date for self-reporting to the Bureau of Prisons at least 90 days from his sentencing date to allow time for him to appeal the denial and to provide the Fourth Circuit with unhurried time to adjudicate that appeal. Denials of release under § 3143 are appealable under 18 U.S.C. § 3145(c), which states that the "appeal shall be determined promptly." *See also* Fed. R. App. P. 9(b). Although the COVID-19 pandemic may affect the Fourth Circuit's typical timetable for resolving appeals involving prisoner release, 90 days should provide sufficient time for Mr. Lindberg and the government to brief this issue, for the Fourth Circuit to hold oral argument if necessary, and for that court to reach a conclusion.

## CONCLUSION

This Court should grant Mr. Lindberg release under § 3143 while the Fourth Circuit resolves the substantial questions presented in this case.

Dated: August 17, 2020

Respectfully Submitted,

/s/ Robert T. Smith

Jeffrey C. Grady (N.C. Bar. No. 32695)
Katten Muchin Rosenman LLP
550 S. Tryon Street, Suite 2900
Charlotte, NC 28202
704-444-2036
jeff.grady@kattenlaw.com

Robert T. Smith (admitted *pro hac vice*)
Rajesh R. Srinivasan (admitted *pro hac vice*)
Katten Muchin Rosenman LLP
2900 K Street, NW – Suite 200
Washington, DC 20007
202-625-3500
robert.smith1@katten.com
rajesh.srinivasan@katten.com

Aaron Zachary Tobin (N.C. Bar. No. 50019)
Condon Tobin Sladek Thornton, PLLC
8080 Park Lane, Suite 700
Dallas, TX 75231
214-265-3800
atobin@ctstlaw.com

Brandon N. McCarthy (admitted *pro hac vice*)
Rachel M. Riley (admitted *pro hac vice*)
Katten Muchin Rosenman LLP
1717 Main Street, Suite 3750
Dallas, TX 75201
214-765-3600
brandon.mccarthy@katten.com
rachel.riley@katten.com

*Counsel to Greg Lindberg*

## CERTIFICATION OF SERVICE

I hereby certify that on August 17, 2020, I electronically filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send notification to counsel of record.

/s/ Robert T. Smith
Robert T. Smith (admitted *pro hac vice*)
*Counsel to Greg Lindberg*